## MICHIGAN MUT. LIFE INS. CO. v. THOMPSON.

(Circuit Court of Appeals, Second Circuit. June 9, 1920.)

No. 214.

1. Insurance ⬅️79—Grounds for termination, specified in agency contract, not exclusive.

An agency contract, fixing no time for duration, but specifying certain grounds for which the company might terminate the relation, did not, by implication, exclude any other ground for termination.

2. Insurance ⬅️84(4)—Agent had no vested right to commissions on renewal premiums.

An agency contract, specifying the amount of commissions on first-year business and on succeeding years' collections, and providing that the agent "will not collect renewal premiums, unless upon receipt furnished to him for that purpose," gave the agent no vested interest for commissions on renewal premiums, on termination of the agency by the company.

3. Contracts ⬅️215(1)—Terminable at will, where duration is not fixed.

The general rule is that contracts not expressly made for fixed period are terminable at the will of either party.

In Error to the District Court of the United States for the Western District of New York.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Albert T. Thompson against the Michigan Mutual Life Insurance Company. From a judgment for plaintiff, defendant brings error. Reversed.

Moot, Sprague, Brownell & Marcy, of Buffalo, N. Y. (W. V. Moot, of Buffalo, N. Y., and J. V. Oxtoby, of Detroit, Mich., of counsel), for plaintiff in error.

Herbert J. Stull, of Rochester, N. Y., for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. [1, 2] April 14, 1902, Thompson agreed with the insurance company to take over the business of the company at Rochester then conducted by one Doescher, and to pay the company any indebtedness due by Doescher for advanced commissions for premiums on Provident policies due after that date not settled for by him, in consideration whereof Thompson was made the company's general agent at Rochester and vicinity, in accordance with a contract made between him and the company on the same day, the material provisions of which are as follows:

"For and in consideration of the services above described, and in compensation in full therefor, the said Michigan Mutual Life Insurance Company hereby agrees to pay the said party of the first part a commission upon all business taken by him and paid for in cash, according to the following schedule, which shall be the commission basis of this agreement."

Then follow a table describing the various classes of policies issued by the company, followed by these words in writing:

"*Nonparticipating* policies (regular, 65% on the first-year business and 5% on succeeding years' collections. *Provident* policies, 75% on first twelve successive monthly installments of premium paid in cash and 20% on all following successive installments of monthly premiums. The company will allow the sum of $25.00 per month for office expenses up to January 1, 1903. * * *

"It is further understood and agreed that all commissions shall cease after the first full annual premium has been collected, and the above-named commissions shall not be allowed on the second or any subsequent annual premium. And the said company agrees to pay said party of the first part a collection fee of 7½ per cent. upon all second and subsequent years' premiums collected by him in cash, except on nonparticipating and provident, as above mentioned. * * *

"It is further distinctly understood and agreed that the party of the first part is not authorized to make, alter, or discharge contracts, waive forfeitures, name an extra rate for special risks, or bind the said company in any way whatever, whether in reference to policies of insurance, or to advertising, printing, rent of office, or any other expense of business; and the party of the first part hereby stipulates that he will not thus undertake to act for the said company, or to make it responsible for any such act, *and that he will not collect renewal premiums, unless upon receipt furnished to him for that purpose,* his duties being simply such as are described in this agreement, and in the rules and instructions of the said company, and that he will not deliver policies or renewal receipts, except on payment in cash of the premiums, or settlement, by good note as provided in his instructions.

"In case the party of the first part shall violate any of the provisions of this agreement, or fail to reasonably increase the business of the said company, the party of the second part may at any time terminate this agreement. Should the party of the first part, by himself, or by collusion with any medical ex-

aminer, policy holder, applicant for a policy, or any other person, defraud the said company, or wrongfully increase the liabilities by any corrupt act or false representation, or attempt thus to defraud, or wrongfully increase the liabilities of the said company, *or should he fail to remit to the said company, as required by this agreement, money collected by him, or to make every or any report required of him, then in every such case all rights of the said party of the first part under this agreement shall become and be forfeited to the said company, and the said company shall thereupon be discharged from every liability to the said party of the first part.*" (Italics ours.)

This agency continued until January 1, 1907, at which time the company discontinued its business in New York, and on December 31, 1906, the company and Thompson entered into another agreement, the material provision of which is:

"That the said party of the first part, in consideration of the covenants and agreements of the said party of the second part herein contained, hereby *agrees to engage in the service of the said party of the second part in the capacity of collecting agent of such collections of premiums of company on business now on the books of said company in Rochester, N. Y., and vicinity, as the renewal receipts may be sent to him from time to time for that purpose, and to deliver said renewal receipts to the persons entitled to the same when said premiums are lawfully paid in accordance with the rules of said company.*"

This arrangement continued until April 20, 1918, when the company discontinued the agency and notified all policy holders to remit their premiums to the company's main office at Detroit, Mich. Thompson signed this second agreement upon the assurance of the company that it was terminable only upon the same conditions as was the original contract of 1902. Thus the question of law is presented whether under the original contract Thompson had, as he claims, a vested interest for commissions on renewal premiums on policies obtained by the Rochester agency, whether collected by him or by the company, or whether, as the company contends, he was only entitled to a collection fee or commission on renewal premiums collected by him in cash for which the company sent him its receipts to be delivered to the policy holders. The trial judge charged the jury that Thompson had such a vested interest, and left as the only question for their determination the amount he was entitled to recover.

If the contract of December 31, 1906, exclusively regulated the relations of the parties, it is clear that Thompson had no vested interest, but only a right to a collection fee on premiums collected by him in cash against receipts furnished to him by the company. However, assuming that it was understood between the parties that the contract was intended to secure the same rights as did the contract of April 14, 1902, we think the learned judge erred in holding that Thompson had any vested interest under that contract. He construed the provision as to the termination of the contract by the company in certain contingencies as defining the grounds upon which the company could terminate the contract, and by implication excluding any other ground. But this provision is added only out of abundant caution. Willcox v. Ewing, 141 U. S. 627, 12 Sup. Ct. 94, 35 L. Ed. 882; Moore v. Security Co., 168 Fed. 496, 93 C. C. A. 652. In the former case Mr. Justice Harlan said:

"If Ewing had the privilege, upon reasonable notice, of severing the connection between him and the company after 1875, upon what ground could a like privilege be denied the company, if it desired to dispense with his services? He contends that his life, or the continuance of the company in business, was the shortest duration of the contract, consistently with its provisions, provided he did his duty. This position is untenable. His appointment was made and accepted subject to the conditions expressed in the agreement. No one of those conditions is to the effect that, so long as he devoted his time, attention, and abilities to the company's business, he should retain his position as its exclusive vendor, within the territory named, without regard to its wishes. If the parties intended that their relations should be of that character, it was easy to have so stipulated. The only part of the contract that gives color to the theory for which the plaintiff contends is the part declaring that a violation of the spirit of the agreement 'shall be sufficient cause for its abrogation.' This clause, it may be suggested, was entirely unnecessary, if the parties retained the right to abrogate the contract after 1875, at pleasure, and implies that it could be abrogated only for sufficient cause, of which, in case of suit, the jury, under the guidance of the court as to the law, must judge in the light of all the circumstances. We cannot concur in this view. The clause referred to is not equivalent to a specific provision declaring, affirmatively, that the contract should continue in force for a given number of years, or without limit as to time, unless abrogated by one or the other party for sufficient cause. It was inserted by way of caution, to indicate that the parties were bound to observe equally the spirit and the letter of the agreement while it was in force."

[3] The general rule is that contracts not expressly made for fixed periods are terminable at the will of either party. This is admitted by the plaintiff, who only contends that the termination of the contract does not terminate any existing vested right created by it. The explicit provisions of the contract preclude such a construction. The trial judge also thought that there was an inconsistency between the written and the printed parts of the contract. We discover none. The table of premiums and commissions must be understood as fixing commissions payable in accordance with the terms of the contract.

We have no doubt whatever that the only right Thompson had under either contract was a collection fee or commission upon renewal premiums collected by him in cash which the company employed him to collect, and for that purpose sent him its receipts to be delivered to the policy holders. The defendant relies greatly upon Hercules Society v. Brinker, 77 N. Y. 435, but in it a commission was expressly given to the agent on renewal premiums, whether collected by him or by others.

The judgment is reversed.