## Peoples Natural Gas Co., Appellant, *v.* Braddock Wire Co.

*Construction of contract—Natural gas.*

A company engaged in making wire entered into a contract with a natural gas company by which the gas company agreed to furnish gas " to be used in heating iron and steel billets for making wire rods and for annealing and for drying wire. Boilers to be used for making steam to roll, draw, twist and cut wire and to pump water for the works." The wire company agreed to pay a certain price per ton " for all iron or steel made from billets into wire," and another price per ton " for all iron or steel made from billets into wire rods, which is not made into wire." *Held,* that the tonnage upon the basis of which the gas was to be paid for was the tonnage of the finished product, and not of the steel billets from which the finished product was made.

*Construction of contract by parties as shown by their course of dealing.*

In construing such a contract, it was not error for the court in its charge to refer to the uniform practice of the parties both under the contract in question and under prior contracts to accept reports and payments on the finished products, as evidence of the construction which the parties themselves placed upon the contract.

Argued Oct. 28, 1892. Appeal, No. 79, Oct. T., 1892, by plaintiff, from judgment of C. P. No. 2, Alleghney Co., Oct. T., 1890, No. 382, on verdict for plaintiff. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit on contract to furnish natural gas.

At the trial, before EWING, P. J., it appeared that, on Jan. 2, 1889, plaintiffs agreed to supply defendants with gas for the purposes of their manufacturing establishment, from Jan. 1, 1889, to July 1, 1890. The contract was based upon the following application :

" THE PEOPLES' NATURAL GAS CO.:

" Application for gas is hereby made, to be used as hereinafter stated, subject to the terms and conditions on the back hereof, which are agreed to by the applicant.

" The gas to be used in our twenty (20) steam boilers and two (2) furnaces and necessary furnaces for annealing and drying wire, located at our works at Rankin Station B. & O. Railroad, near Pittsburgh, Pa.

" The furnaces to be used in heating iron and steel billets, for making wire rods and for annealing and for drying wire. Boilers to be used for making steam to roll, draw, twist and cut wire and to pump water for the works."

The wire company agreed to pay for the gas $1.90 per ton " for all iron or steel made from billets into wire," and 95 cents per ton for all iron or steel made from billets into wire rods which is not made into wire ; " and wire made from rods not rolled in their mill was to be paid for at the rate of 95 cents per ton.

Among the conditions which were made part of the contract, was the following :

" 4. Consumers will be permitted to use of the gas only as provided for in the contract, and if any additional privileges are desired, the written consent of the company thereto must first be obtained and an additional compensation paid therefor."

Defendants claimed that the tonnage upon which the gas was to be paid for should be the tonnage of the finished product, and not of the raw material.

The court charged in part as follows :

" [The contract itself meant, and was intended to mean, that the tonnage on which the gas bills were based was not the steel billets that were used—not the raw material—but the product of it.] [1] . . . .

" [The history of the transactions of these parties seems to throw light on this question.   It seems that the company started to make wire rods alone in 1885 or 1886, the Peoples Natural Gas Company furnishing them gas.   In November, 1887, a contract was made between the two for the year 1888, in which it is plainly contemplated that the product is to be not only rods but wire.   That contract, so far as I recall it, and everything relative to this matter, is in the same words as the

contract for the eighteen months beginning at the first of January, 1889.   They operated first under a contract prior to that, and then under what, in the evidence, has been called the second contract, for the year 1888, and then under the third contract for the eighteen months ending July, 1890.   They established a course of dealing with each other.   The defendant company and its officers were intelligent men, and understood the business of the gas company, at least in a general way. The officers, some of the leading ones of the gas company, were very intelligent men.   They were on the stand before you, and if you do not conclude that the president of the company especially, and one or two of the others, are very intelligent men, thoroughly well posted on the subject-matter, and understand machinery and mills, you will come to a different conclusion from what I anticipate you will.   The evidence shows that, before and at the time of making this contract, the officers of the gas company were familiar with this mill and the manner of operating it.   Some of the principal officers were there very frequently, and they knew it so well that they undertook to advise at different times in regard to the manner it should be run.   They knew the boilers and engines, and knew the arrangement of the mill, and how it was run.   I do not think there is any dispute or can be any doubt that that is the fact.] " [7]

Verdict and judgment for plaintiff for an amount based upon the tonnage of the finished product.   Plaintiff appealed.

*Errors assigned* were (1, 7) instructions, quoting them.

*S. Schoyer, Jr.*, *W. S. Miller* with him, for appellant.

*Willis F. McCook*, for appellee.

PER CURIAM, January 3, 1893:

The principal contention in this case was, whether, under the contract of 1889 the tonnage on which the gas bills were based was upon the steel billets that were used, that is, the raw material, or the product of it.   The learned judge below instructed the jury that the tonnage was to be based upon the product.   The able argument of appellant's counsel has failed to satisfy us that this instruction was erroneous.

There were a number of other items in plaintiff's claim, which it is alleged were not included in the contract, and for which the defendant company should pay. Some of these claims were sustained in part by the learned judge of the court below and others were submitted to the jury under fair instructions. We do not think it is necessary to discuss them in detail. The appellant complains of that portion of the charge of the learned judge, embodied in the seventh specification, in which he refers to the course of dealing between these parties. We do not think this reference objectionable. It was used to illustrate the construction placed upon this contract by the parties themselves; when we are asked to say what the parties meant or intended by their contract, it is entirely safe to point to their own construction of it, as evidenced by their course of dealing under it.

Judgment affirmed.