# Standiford, Appellants *v.* Kloman.

*Contract—Written contract—Construction—Extension of option—Province of court and jury.*

1. It is a general rule that the court, and not the jury, are to judge of the meaning of a written instrument, except in certain cases, where the instrument is not to be understood without reference to facts dehors the writing, and then it may be proper that the jury, who are to inquire into the facts, should judge of the whole. But when that is not the case the courts are bound to give the construction; and if they refuse to do so and leave it to the jury it is error.

2. Where the parties to a written option to purchase land execute, during the running of the option, a later written contract, which expressly states that its purpose is "to give to the parties of the second part an extension of thirty days to carry out the terms of the written contract," previously made "and executed by the same parties," a recital in the second contract "that the terms in the contract are to be complied with on or before" a day named, is not to be construed as converting the agreements between the parties from an option to a contract of purchase and sale; and such a construction is especially required where a letter sent by the seller to the purchaser with the new contract to be executed, calls attention only to some minor points of difference between the two agreements, and shows by its terms that it was the intention of the parties that the new agreement was to be only an extension of the old one.

3. In such a case the construction of the contract is for the court, and it will not be carried to the jury by the parol evidence in the case, which was not introduced for the purpose of throwing any light on the understanding of the parties by determining some extrinsic fact on which the true construction of the contract depended, but rather to show what had been done by each party under the contract within the stipulated time.

Argued Nov. 1, 1911. Appeal, No. 222, Oct. T., 1911, by plaintiffs from judgment of C. P. No. 4, Allegheny Co., Fourth Term, 1907, No. 1048, on verdict for defendants in case of Harry Standiford, J. B. Harrell, Jacob Wissler, Walter A. Armstrong and William A. Engel v. A. C. Kloman, L. E. Huseman, F. R. Huseman,

P. Brennen and J. H. Bokerman.   Before FELL, C. J.,
BROWN, MESTREZAT, POTTER, ELKIN, STEWART and
MOSCHZISKER, JJ.   Affirmed.

Assumpsit for breach of contract.   Before CARNA-
HAN, J.

The contract in question was in writing, and its
premises containing the names of the parties was as
follows:

"Memorandum of agreement made and entered into
this 18th day of May, 1906, by and between H. Standi-
ford, and associates of the City of Washington, District
of Columbia, parties of the first part, and A. C. Kloman,
and associates of the City of Allegheny, Pennsylvania,
parties of the second part, all of whom having signed
their names hereto are made parties to this contract."

The remaining material portions of the contract are
quoted at length in the opinion of the Supreme Court.

At the trial the court construed the contract of May
18, 1906, as an extension of the option previously given
on February 26, 1906, and gave binding instructions
for defendants.

Verdict and judgment for defendants.   Plaintiffs ap-
pealed.

*Errors assigned* were (1, 2) above instructions quot.
ing them.

*Frederick L. Siddons* of *Ralston, Siddons & Richard-
son,* for appellants.— The construction of the contract
was for the jury under the evidence.   Etting v. Bank of
the United States, 24 U. S. 59; Swan v. Scott, 11 S. &
R. 155; Edwards v. Goldsmith, 16 Pa. 43; Watson v.
Blaine, 12 S. & R. 131; Foster v. Berg, 104 Pa. 324.

*Frederic W. Miller,* with him *W. A. Challener* and
*F. H. Phillips,* for appellees.—The contract was for the

court. Foster v. Berg, 104 Pa. 324. Even where a contract is oral and there is no dispute as to the facts, its construction is for the court, there being no question for the jury: Edelman v. Yeakel, 27 Pa. 26; Elliott v. Wanamaker, 155 Pa. 67.

OPINION BY MR. JUSTICE STEWART, January 2, 1912:

The action was for the recovery of damages for an alleged breach of contract. Plaintiffs were the holders of an option for the purchase of certain lands in Augusta County, Va., in all 8,975 acres. On 26th February, 1906, they entered into a written contract with the defendants wherein, after reciting that steps had been taken to incorporate a company to be known as the American Manganese Mining and Manufacturing Company, with capital stock of 10,000 shares of the par value of $100 each, to purchase and take over and develop the lands above mentioned and on which plaintiffs held an option, it is provided as follows: "That in consideration of the premises and of aiding in the formation of said company, the said parties of the first part hereby agree to procure and have executed a good and satisfactory deed of general warranty, conveying all the aforesaid tract with the rights of way and other rights from the estate of John Wissler, deceased, now owning same to said American Manganese Mining and Manufacturing Company, or to such other grantee as the parties of the second part shall direct, and to deliver said deed in escrow to some bank satisfactory to both the parties hereto, to be held and delivered by said bank on the fulfilment of the conditions hereinafter set out."

"The said parties of the second part agree to proceed as rapidly as possible to incorporate and organize the said American Manganese Mining and Manufacturing Company and pay the expenses of such organization being completed, that he will cause to be allotted to said parties of the first part for himself and his associates 4,380 shares of the capital stock of the said company,

fully paid and non assessable, and $95,000 of the bonds to be issued by said corporation, (or the net amount of cash realized from sale of the said $95,000 of bonds); and a further consideration of $55,000 in cash, that there is to be allotted to said parties of the second part the remaining 5,620 shares of the capital stock of said corporation fully paid and non assessable, and on the presentation of said certificate or certificates of said 4,380 shares of stock and said $95,000 of bonds of said corporation (or the net amount of cash realized from sale of $95,000 of bonds) and the payment of $55,000 in cash to said party of the first part and associates, they will cause to be delivered to said parties of the second part or associates, or their assigns by the bank aforesaid, the deed above directed to be held in escrow; that said party of the second part and associates will have inserted in the by-laws of said corporation the provision that the board of directors thereof shall number seven, and it is agreed that the said party of the second part shall for himself and his associates have the power and right to nominate and elect four of said seven of the board of directors, and that said party of the first part shall for himself and his associates have the power and right to nominate and elect the remaining three of said board of directors; that in all contingencies the control and management of said corporation shall remain and be in the said party of the second part and his associates; that in case the number of the board of directors be other than seven, said party of the second part and his associates shall have the power and right to nominate and elect a majority of the members of said board of directors, and said party of the first part shall have for himself and his associates the power and right to nominate and elect the minority of said board of directors."

"This contract is made and executed by mutual consent of all parties hereto, for the purpose of giving the parties of the second part an extension of thirty (30)

days time to carry out the terms of the contract dated February 26, 1906, and executed by the same parties, and it is understood and agreed that the signing of this contract terminates the contract dated February 26, 1906, and the same is null and void."

"The terms of this contract are to be complied with on or before July 1, 1906."

It is to be observed that the purpose of the contract as here defined was to give the parties of the second part (the defendants) an extension of time to carry out the terms of a contract dated February 26, 1906, between the same parties. While the latter agreement in express terms abrogates the earlier, it yet imports and incorporates the terms of the earlier in such a way that the whole contract can be understood only as both are considered. The points of difference between the two are these: (1) the earlier gave a right to acquire the lands up to 1st June, 1906; the latter one, up to 1st July, 1906, (2) by the earlier, plaintiffs were to receive $95,000 of the bonds to be issued by the corporation, while by the later this obligation could be discharged by paying the net amount received by the corporation on sale of the bonds; (3) the earlier concluded in this way, "This agreement to terminate and be null and void on and after June 1, 1906;" while the later provides that "The terms of this contract are to be complied with on or before July 1, 1906." We are concerned here only with the difference last mentioned and the clause in the later agreement which defines the purpose of its execution. It is the contention of the plaintiffs that the provision in the later agreement that the terms were to be complied with on or before July 1st, created a binding obligation on the defendants to accept a conveyance of the land and pay therefor the stipulated price within the period named. The dispute is resolved into a question of construction. There was parol evidence in the case, but it was introduced not with a view to establish extrinsic facts to aid in deter-

mining the meaning of the parties; furthermore, what evidence of this kind was introduced presents no conflict whatever. The construction of the contract was therefore for the court. The court gave binding instructions for the defendant. On behalf of appellants it is insisted, first, that the question was one for the jury, and, second, if otherwise, that the construction placed on the contract by the court was erroneous. The first contention is based on a manifestly mistaken view of the evidence. True there was parol evidence in the case, but this evidence, as we have said, was not introduced for the purpose of throwing any light on the understanding of the parties by determining some extrinsic fact on which the true construction of the contract depended, but rather to show what had been done by each party under the contract within the stipulated time. We are at a loss to know exactly why it was introduced, but, certain it is that it was of no avail to show a contemporaneous construction by the parties, and, what is still more important in this connection, it disclosed no conflict. Our attention is directed to the testimony of Mr. Kloman, one of the defendants. With respect to the testimony of this witness we have only to say that, except as it identifies a letter written by Mr. Standiford, who represented all the plaintiffs, addressed to Mr. Kloman, representing all the defendants, and accompanying the agreement which had then been executed by the plaintiffs and was submitted for execution by defendants, it was entitled to no consideration, even if admissible. Whether Mr. Kloman and the other defendants read over the agreement before they signed it, and if so, whether they observed that clause which did not occur in the earlier agreement and which gives rise to the present contention, were matters of no consequence whatever in the issue being tried. The testimony, except as we have indicated, had not the remotest bearing on the case, while outside this testimony and such other as bore on the same subject, there was no parol evidence

whatever.   Therefore there was nothing for the jury to decide.   "It is a general rule, that the court, and not the jury, are to judge of the meaning of a written instrument, except in certain cases, where the instrument is not to be understood without reference to facts dehors the writing, and then it may be proper that the jury, who are to inquire into the facts, should judge of the whole.   But when that is not the case the court are bound to give the construction; and if they refuse to do so and leave it to the jury it is error; 12 S. & R. 136. An interesting case as defining the duties of the court in such cases, and very apposite here, is Johnston v. Gray, 16, S. & R. 361.   The learned trial judge construed the contract to be simply an extension of the option given by the contract of 26th February preceding, which contract it is conceded created no liability. In this he was entirely right.   The later contract expressly states its purpose as being "to give to the parties of the second part an extension of thirty days to carry out the terms of the contract dated 26th February, 1906, and executed by the same parties."   The terms to be carried out were not any new or different terms, but those contained in the earlier contract.   If it be said that the terms referred to included only the price and times and manner of payment, kind and extent of title to be conveyed, the answer is, that while all these things were necessarily included, the fact remains, it being conceded that the earlier contract is but an option, that one of its terms was that it should impose no obligation on the defendants to take the land, and therefore no liability for damages for failure to take.   What reason could there be, gathering the intent from the language used, for concluding that the optional feature was not one of the terms to be carried out or observed?   From the purpose as expressed, viz., to grant an extension of the time in which defendants could avail themselves of the option granted by the earlier contract, we derive a clear implication that in this contract, as in that, the

carrying out of the contract rested in the option of the defendants. But, it is urged that what followed in the later contract, viz., "that the terms in the contract are to be complied with on or before July 1, 1906," is to be construed as an express agreement of purchase and sale. With respect to this it is to be observed first, that the language here used does not necessarily import any such understanding or agreement. Quite as natural a construction, considering the relation the contract bears to the earlier one and the purpose of the new contract as expressed, would be that except as defendant did comply with the provisions of the contract on or before July 1, the contract would be at an end. The difference in phraseology between the two contracts, of course, is matter for consideration; but in view of the circumstances, the situation of the parties, and especially the letter accompanying the agreement forwarded to defendants for their execution from Mr. Standiford, that it was the purpose of the parties to turn what had been but an option into an absolute sale seems so entirely improbable, that the reasonable conclusion must be that the difference in phraseology meant no change of purpose whatsoever. Were there nothing else in the case we would regard Mr. Standiford's letter in itself conclusive on this point. The letter reads as follows:

"Dear Sir—

"As per statement outlined in my letter of yesterday, I herewith enclose the agreement, copied from the old agreement, with such changes only to cover the extensions and the present arrangement for giving us the cash instead of the bonds—we using the term 'or cash, &c.' and a clause abrogating the old contract. In doing this we are giving you all the time we have to make our final payment on the property, and to get any further extension it would entail additional expense upon us."

Could there be a more explicit acknowledgment that the plaintiffs themselves when they submitted the contract to defendants for execution understood that it

was simply an extension of the option of 26th February? Specific mention is here made of the only points of difference between the two agreements. A reasonable inference from the language thus used, indeed one supported by rule of law, would be, that if other differences than those mentioned appeared, except as clear mistake was shown, they would be ineffectual. But again; if, overlooking the significance of the word "only" as it occurs, it was intended by the later agreement to convert what by the earlier one was a mere option into an absolute sale, why was it that specific mention was made of minor changes, and not even remote reference made to the most radical change involving the parties in large responsibilities? When we are asked to say what the parties meant or intended by their contract, it is entirely safe to point to their own construction of it. This was said in Peoples Natural Gas Company v. Braddock Wire Co., 155 Pa. 22, and we repeat it here. Further comment is unnecessary. We agree that the construction the contract received at the hands of the learned trial judge correctly expresses the true intent and meaning of the parties. The assignments of error are accordingly overruled and the judgment is affirmed.