Simsohn v. Wetter, Appellant.

Argued October 20, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Mortimer B. Rosenberger,* and with him *Harold B. Beitler* and *J. Rouse Burns,* for appellant.

*Abraham L. Freedman* of *Wolf, Block, Schorr and Solis-Cohen,* for appellee.

OPINION BY KELLER, J., February 1, 1934:

This action in assumpsit was based on the following contract:

"February 19, 1929.

"Hotel Lorraine,

Broad & Fairmount Sts.,
Philadelphia, Pa.
Attention—F. L. Scholl, Gen'l Mgr.

Gentlemen:

Confirming our conversation of today, we are herewith proposing to render you power plant service for the sum of five hundred dollars ($500) per annum.

Services will consist of weekly visits to your plant and oftener when necessary, and will include:

(a) Boiler feed-water treatment for the prevention of scale formation;

(b) Analysis of coal and ash on alternate weeks;

(c) Flue gas and combustion tests together with such recommendations as are in keeping with the economical operation of your power plant.

We shall further consult with you on the advisability of all changes such as purchased power, electrification of pumps, or any other similar matters that may from time to time come before you.

This is an operating agreement, and all installation work for which we have prepared specifications and plans we make a charge of 10% of the total cost of the installation. In general this is the same work we did for you for a period of years in the past and we hope to have the pleasure of again being of service to you.

Your written acceptance of this proposal will constitute an agreement as between us.

Very truly yours,
(Sgd.) Julian S. Simsohn,
Engineers.

JSS*EHS

The above proposal is hereby accepted.
Date: March 20, 1929.
(Sgd.) Hotel Lorraine,
By F. L. Scholl, Mgr.
Services begin April 1, 1929."

The plaintiff's claim in this action consisted of two items, neither of which related to the "operating" portion of said contract, for which he was paid a yearly salary of $500; but were both concerned with charges for services in connection with that portion of the contract relating to "installation work."

(1) The first item, $390.84, is based on the averment that the defendant desired to convert the hydraulic pumps in the Lorraine Hotel, which were steam driven, to electrically driven, and on or about April 1, 1929 ordered plaintiff "to proceed with the investigation and calculation necessary for the installation of new hydraulic pumps and air compressors." The plaintiff proceeded with the investigation, and made calculations and specifications of the requirements for new pumps and air compressors, and secured bids, the lowest of which amounted to $6,514, which were 'approved' by defendant's agent and general manager, on May 15, 1929; but *before any plans for said work were prepared by plaintiff*, or any bids were accepted, contracts made, or supervision done, the defendant abandoned the installation of the new hydraulic pumps and air compressors; by reason whereof the plaintiff claimed that he was entitled to ten per cent of the total of said bids, $6,514, or $651.40, but waived all in excess of six per cent thereof or $390.84.

(2) The second item, $1,000, is based on the averment that defendant advised plaintiff that it desired to change the engine in said Lorraine Hotel and authorized him to secure bids on new and used units therefor; that plaintiff communicated with various persons and secured bids as to various engine units which might be installed at Lorraine Hotel, and made the necessary calculations and specifications as to the engine unit requirements of said hotel; that thereafter, on July 16, 1929, defendant contracted directly with the Skinner Engine Co. for

an engine at the price of $10,000; that plaintiff offered to test the Skinner engine, to ascertain whether the guarantees had, been met on the part of the engine company (50-a), but defendant refused; and said Skinner engine unit was installed in the hotel in October, 1929, without any supervision or test by the plaintiff. Plaintiff claimed ten per cent of the installation price of this Skinner engine, or $1,000.

The contract between the parties was in writing. It is not ambiguous; nor is it necessary to resort to evidence dehors the instrument to interpret it. Its construction was for the court, not the jury: Baldwin v. Magen, 279 Pa. 302, 123 A. 815; Standiford v. Kloman, 234 Pa. 443, 83 A. 311.

It did not employ the plaintiff to prepare specifications and plans for all, or even any, work which it might install; nor grant the plaintiff the exclusive right to prepare plans and specifications for such work. It did not obligate the defendant to. proceed with and carry to a conclusion all installation work which it might contemplate, or consult the plaintiff about; nor did it bind the defendant to pay the plaintiff ten per cent of the *estimated* cost of any work which it might contemplate installing, and concerning which plaintiff was consulted, but which for reasons best known to the defendant it never proceeded with and installed. The contract between the parties provides that plaintiff shall be paid ten per cent of the 'total cost of installation' of all installation work for which he had prepared the specifications and plans. This means work installed pursuant to his specifications and plans. The contract—differing from that in Orth v. Board of Education, 272 Pa. 411, 116 A. 366,— is silent as to plaintiff's compensation for drawing specifications and securing bids for work never adopted and installed by defendant. His recovery for such services must be on a quantum meruit basis, if at all: Jull's Est.,

Cohen's App., 313 Pa. 42, 169 A. 237; and the plaintiff's statement should be amended accordingly.

As to the first item of the plaintiff's claim, the evidence establishes that the new electrically driven hydraulic pumps and air compressors were never contracted for or installed; no *plans* for them were prepared by plaintiff; no supervision done. The project was abandoned by defendant before any bid upon it was accepted or contract made, except as to the new exhaust line, which was installed later pursuant to bid, at a cost of $746, and for which plaintiff is entitled to $74.60. Except as to this item, plaintiff was not entitled to the compensation provided in the agreement between the parties, to be paid him for preparing specifications *and plans* on work installed, and fixed at ten per cent of the 'total cost of installation'. Under an amended statement he would be entitled to the reasonable value of his work and services in preparing specifications and securing bids for the abandoned work, unless the defendant produced evidence defeating his right thereto. Consultation as to the advisability of such work is included in the $500 annual charge.

As to the second item, we have already pointed out that the contract between the parties did not employ the plaintiff to prepare specifications and plans for all, or any, work which it might install; nor give the plaintiff any exclusive right to prepare specifications and plans for defendant's installation work. If it adopted his specifications and plans, prepared pursuant to instructions, and installed the work contemplated thereunder, he was entitled to a compensation of ten per cent of its total cost of installation. If his specifications were unsatisfactory, were not adopted, or for any reason moving the defendant were not proceeded with, the compensation fixed by the agreement and based on a percentage of the total cost of installation

under his specifications and plans, did not become payable to him. The plaintiff did not prepare the plans for the engine installed by the Skinner Engine Co. The evidence does not show that it followed the design or specifications prepared by the plaintiff pursuant to defendant's instructions. The defendant, of course, could not directly contract with some firm and use plaintiff's plans and specifications to construct and install an engine, without paying plaintiff the agreed percentage; but it was not bound to adopt the plaintiff's plans and specifications, and if it installed an engine not constructed or based on his specifications, he could not demand payment of the agreed percentage of its total cost of installation. Here again, in that case, upon an amended statement, he might or might not be entitled to the reasonable value of his work and services in preparing specifications and securing bids, depending on the evidence presented at the trial.

The trial judge in his instructions to the jury did not adopt the construction of the contract here presented and the judgment must be reversed.

The assignments of error are sustained. The judgment is reversed and a new trial awarded.