## Standard Life Insurance Co. *v.* Carey.

*Principal and agent—Insurance agent—Advances as expenses—Advances on account of commissions—Contract—Conditions.*

1. Where an insurance company agrees to make certain monthly payments to its agent, which should be treated as advances on account of commissions, on certain conditions named, and the agent accepts and uses the payments without objecting to the conditions, he will be bound by the conditions as stated.

*Principal and agent—Personal services—Period of employment—Neglect of duties—Dismissal.*

2. Where a contract of employment is one for personal services with no definite period of time expressed, the employment is terminable by either party at will.

3. Where an agent of an insurance company, in violation of his contract, devotes himself to other interests, neglects his employer's work, fails to make returns, or keep proper accounts, he may be dismissed, and it is immaterial whether his contract of employment was terminable at will, or was to continue during his lifetime or any other period.

Argued February 2, 1925. Appeal, No. 110, Jan. T., 1925, by defendant, from order of C. P. No. 2, Phila. Co., June T., 1920, No. 3834, dismissing exceptions to report of referee, in case of Standard Life Insurance Co. v. Lawrence F. Carey. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit on contract.

Exceptions to report of Walter C. Douglass, Jr., Esq., referee. Before STERN, P. J., and LEWIS, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Defendant appealed.

*Error assigned* was, inter alia, order, quoting it.

*George J. Edwards, Jr.,* with him *Hiram B. Calkins* and *Leighton P. Stradley,* for appellant.—The contract in suit was intended to continue for the life of the defendant: Rossmassler v. Spielberger, 270 Pa. 30; Nolle v. Mut. Union B. Co., 264 Pa. 534; Weidman v. United Cigar Stores Co., 223 Pa. 160; Riefkin v. Dupont De Nemours & Co., 290 Fed. 286; Galey v. Mellon, 172 Pa. 443; Franklin Telegraph Co. v. Harrison, 145 U. S. 459.

Plaintiff is limited to the reason assigned by it at the time in seeking to justify cancellation of the contract. The reason so given is insufficient, and its other grounds as well: Honesdale Ice Co. v. Imp. Co., 232 Pa. 293; Haney v. Hatfield, 241 Pa. 413; United Fruit Co. v. Bisese, 25 Pa. Superior Ct. 170.

· The expense allowance to defendant was a privilege provided for by the contract, and no contract by which he agreed to repay the amounts claimed by plaintiff is alleged, or proved: Hertzog v. Hertzog, 29 Pa. 465; Powers v. Curtis, 147 Pa. 340.

*F. S. Edmonds,* of *Edmonds & Obermayer,* with him *Frederick H. Knight,* for appellee.—The contract of agency entered into between the plaintiff and defendant on January 14, 1913, and the modifications thereto were terminable at will; and plaintiff, by terminating the relationship, violated no contract and incurred no liability; Hogle v. Hook & Eye Co., 248 Pa. 471; Weidman v. United Cigar Stores Co., 223 Pa. 160; Kirk v. Hartman, 63 Pa. 97; Press Pub. Co. v. News Agency, 44 Pa. Superior Ct. 428; Hanger v. Fitzsimmons, 273 Fed. 348; Haldeman v. Machinery Co., 80 Pa. Superior Ct. 578; Fay Gas Fixture Co. v. Light Co., 189 Pa. 20; Coffin v. Landis, 46 Pa. 426; Wilcox & Gibbs Sewing Machine Co. v. Ewing, 141 U. S. 627; Dickson v. Mfg. Co., 179 Pa. 343.

The contract of agency entered into between plaintiff and defendant on January 14, 1913, and the modifications thereto were terminable by plaintiff for cause without any liability by reason of such termination; and sufficient cause existed to justify the dismissal: Macfarren v. Gallinger, 210 Pa. 74; Carson v. Hosiery Co., 15 Pa. Superior Ct. 476.

OPINION BY MR. JUSTICE FRAZER, March 16, 1925:

This action is based on a contract wherein plaintiff employed defendant as its agent to solicit insurance, and was brought to recover various items claimed to be due from defendant on an open account between them, and the further sum of $25,000 damages for breach of contract by defendant. The latter's affidavit of defense denied any amount due plaintiff and set up a counterclaim for damages in the sum of $200,000 for alleged breach of contract by plaintiff in wrongly dismissing defendant.

The case was, by agreement, submitted to a referee who, after hearing the evidence, found in favor of plaintiff for the several items of indebtedness set forth in its statement, exclusive of the claim for damages. Exceptions filed by defendant were dismissed by the court and judgment entered for plaintiff, from which defendant appealed.

In a stipulation signed and filed by attorneys for the parties it is conceded that all items included in the award in favor of plaintiff were proper with the exception of the sum of $1,819.55, representing the amount of monthly payments advanced to defendant during the continuance of the contract, and agreed that, if the court should be of opinion that plaintiff was not entitled to be repaid this amount, it should be deducted from the judgment entered by the court below, otherwise the judgment should stand as rendered, subject to the decision of the court on the question of defendant's right to recover on his counterclaim.

The contract, dated January 14, 1913, provided, inter alia, for the appointment of defendant as plaintiff's agent, with power to designate and employ subagents for the purpose of soliciting life insurance within the territory specified, which was "assigned exclusively to the agent for the purpose hereinbefore mentioned, upon condition that the company shall receive from the agent and his subagents, during each twelve months......an amount of insurance aggregating $500,000. In the event of the failure of the agent to comply with this condition as to quota, the territory herein assigned to the agent shall thereupon cease to be exclusive to said agent," and reserving the right to the company to employ other agents within that territory. It was further provided that "in the event of the termination of this contract by death or otherwise," the company would pay to the agent "or to his heirs, executors, administrators or assigns, as the case may be," specified commissions. These commissions varied from 60 to 80 per cent of the premiums

paid by the insured to the company during the first year, and from five to seven and one-half per cent on renewals subsequent to the first year, and continuing while the policies remained in force. Also that "In event of the assignment of this contract as hereinafter provided by the agent to the East Penn Securities Co." the commissions should be paid to that company or to its successors "both during the continuance and after any termination of this contract." Defendant also agreed "to use his best endeavors to fulfill the obligations of this contract, and to obey and observe all the instructions, rules, and regulations of the company, and [to] devote his entire time and best energies to its interests during the time that he has exclusive rights as soliciting agent in the territory assigned to him as herein provided, acting exclusively for it and not tendering any application for insurance in any other company, unless first offered to and declined by the company," and, during the time defendant should act as soliciting agent for plaintiff, "use his best endeavors" to avoid any lapse of policies written, and, "in the event of the agent's terminating this contract so far as continuing as soliciting agent for the company as provided herein, the company shall have the right to deduct, from any future renewal commissions due hereunder, the amount of any office rent the company may be obliged to pay during the unexpired term of any lease the agent may at that time have in Philadelphia for the transaction of the company's business."

The pertinent provisions of the contract on the question of advancement of the $1,819.55 are that, during the continuance of the contract, plaintiff would "pay the agent a monthly allowance of $135, which allowance, however, may be discontinued by the company upon the agent failing to pay for, annually, $500,000 of life business." This credit was subsequently increased to $150 per month, and later the company's executive committee authorized a further increase of $50, and so notified defendant by letter dated January 25, 1916, subject

to the following provisions: "If your agency pays for $500,000 of life insurance this year, the entire $600 will be an expense allowance. If your agency pays for $400,-000 of business, $300 of the additional amount will be an expense allowance and $300 an advance against commissions. If less than $400,000 of business is paid for, the $600 will become an advance."

The foregoing extracts from the contract are the material parts bearing on the questions before us for determination. Taking up first plaintiff's right to a return of the last $50 a month advances, the letter quoted above clearly defines rights of parties, and relieves us from the necessity of considering whether, under the original contract, the amount stipulated was intended to be treated as a business expense or as a mere drawing account to defendant for which he would be obliged to make return. Such payment could be treated as an expense in event defendant's business reached the required standard, otherwise it should be treated as an advance against commissions and deducted therefrom. Defendant accepted and used the money with knowledge of the conditions, and, although he protested, plaintiff at no time assented to a change in the terms indicated in its letter, consequently defendant on accepting and using money became bound by the attached conditions. The uncontradicted evidence and the findings of the referee are that the business during the years mentioned fell far below the amounts stated in the letter, hence plaintiff was within its rights in treating the payments as advances against commissions earned by defendant. The judgment entered by the court below was accordingly proper and must be sustained unless defendant's counterclaim is to be recognized as valid.

The basis of defendant's contention is that the contract was a permanent undertaking and not subject to termination at will by plaintiff. The referee, in an elaborate opinion, fully discussing the question of revocability, reached the conclusion that, as the contract was one for

personal services with no definite period of time expressed, it was terminable by either party at will, following the general rule found in numerous cases: Kirk v. Hartman & Co., 63 Pa. 97, 105; Weidman v. United Cigar Stores, 223 Pa. 160, 161; Hogle v. DeLong Hook & Eye Co., 248 Pa. 471, 473. We find nothing in the provisions of the contract quoted above tending to bring the case within any exception to the rule applied by the referee and court below. We consider unnecessary, however, a discussion of this question, inasmuch as another principle of law fully sustains the judgment entered by the court below.

Regardless of how we view the contract, whether terminable at will or to continue during the lifetime of defendant or for any other definite or indefinite period, the consideration for the payment of commissions was the service the contract required defendant to perform. In case of failure on his part to properly discharge the duties devolving upon him under the agreement, there can be no doubt as to plaintiff's right to declare it at an end, subject only to the continued payment of the prescribed percentages on future renewals of policies written by defendant. As to such payments, no question is raised in this proceeding. The referee found, and his findings are amply supported by the testimony, that defendant neglected and failed to comply with the provisions of the contract in various respects. Notwithstanding the stipulation that he should use his best endeavors to secure reinstatements of lapsed policies, that class of business in 1919 exceeded $192,000, while during the same year new business written by defendant aggregated only $198,000. In 1920 the lapsed policies totaled nearly $200,000 for the first four months, while new business written during that time did not exceed $30,000. There is evidence, in fact it is conceded by defendant, that he was interested in other enterprises and neglected to give proper time or attention to either procuring new business or securing reinstatement of lapsed policies.

Although frequently requested, he failed to furnish reports and made no replies to numerous letters written him by plaintiff requesting information in regard to the company's business until after having been repeatedly asked so to do. Plaintiff often notified defendant that his work was unsatisfactory, and although defendant as often promised to withdraw from outside interests and devote his entire time to the company's business, he utterly failed to keep his promises. The sole explanation by defendant of the falling off of business and of his apparent carelessness, was that his other interests prevented him from properly looking after plaintiff's insurance matters.

Defendant neglected to keep full accounts of his agency's business, stating frankly that he was not capable of so doing, and requested plaintiff at the end of the year to fill out a check for the amount of his indebtedness as shown by its books, and forward to defendant for his signature. Under these circumstances, the court below correctly found that defendant failed to perform duties imposed upon him by his contract and that plaintiff was consequently justified in treating the contract as broken and in dismissing him.

The judgment of the court below is affirmed.