## Hand's Estate.

Argued April 10, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*R. L. Levy,* with him *Milton W. Lowry* and *J. Julius Levy,* for appellants.

*David J. Davis,* with him *John P. Kelly* and *Clarence Balentine,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, May 21, 1934:

The questions to be disposed of in this proceeding arise out of exceptions filed by Charlotte Hand, widow, and Elizabeth Hand Dean, only daughter of David B. Hand, deceased, to the seventh account filed by the Scranton Lackawanna Trust Company, executor and trustee of the decedent. These exceptions relate to credits claimed by the accountant for certain sums paid to Frederick Cromwell Hand, only son of the decedent. The learned president judge of the court below dismissed the exceptions, and the widow and daughter appeal.

David B. Hand was a physician and the owner of certain proprietary medicines which were manufactured and sold for him by the Smith, Kline & French Company. Their sale was very profitable. When Dr. Hand died, he left a gross estate of more than a million dollars.

The exceptions refer to two classes of disbursements: Salary paid by the executor to the son out of the estate, amounting to $400 a month, and payments of fifty per cent of the profits in excess of $18,000 realized from the proprietary medicine royalties.

Dr. Hand practiced in Scranton. For some years before his death his son devoted himself exclusively to his father's business affairs. The widow was Dr. Hand's second wife. She is not the mother of the two children. At the time of his death on April 1, 1923, the decedent

was seventy-three years old. There is no suggestion that he was not at all times mentally strong and vigorous.

Before he married the second time Dr. Hand entered into an antenuptial agreement with his prospective bride. Sometime after their marriage he made his will, and his wife, by agreement in writing, bearing even date with it, surrendered the antenuptial contract and accepted and agreed to the terms of the will. The will contained the following provision: "I request my executor hereinafter named to employ my son, as far as it finds he can be of benefit to my estate, and to pay him for his services such compensation as it shall deem just and adequate." Decedent's wife knew, therefore, of the contemplated employment of the son by the executor at the testator's suggestion and acquiesced in the propriety of so doing. Subsequently Dr. Hand executed a codicil to his will and his wife signed a paper in which she acknowledged that the contents of the will were well known to her and that she consented thereto. At the time of his death Dr. Hand was paying his son for services rendered to him $750 per month.

Following the execution of his will, which is dated May 7, 1919, Dr. Hand signed certain papers which have a most important bearing on the controversy before us. On January 27, 1920, he executed a declaration in which he said that to compensate his son for his services in accomplishing a settlement of the difference between Smith, Kline & French Company and himself and amending the royalty provisions of their contract, whereby the royalty paid to Dr. Hand was increased, he agreed that his son should receive fifty per cent of any amount of royalties over $18,000 per year. Later in the year, on November 10th, the father delivered to the son another paper of similar tenor, and on the same day a formal agreement was entered into by the father and son in which their relationship was recited and it was set forth that for the preceding ten years the father had relied upon, trusted and employed and been in constant asso-

ciation with his son as his confidential agent and manager of his business affairs "which duties have taken up the entire time and energy [of the son] so that he has not been able to engage in any other business or employment." It was also set forth that the father had requested the son to continue to act as his agent and manager. In consideration of past and future services the father agreed to pay the son $750 per month during the former's life and constituted him his attorney in fact. The agreement confirmed the undertaking to pay to his son fifty per cent of the royalties in excess of $18,000 per year derived from the sale of the proprietary medicines, which payment it was stated should be in addition to the monthly salary. On the same day that this agreement was executed, Dr. Hand delivered to the executor and trustee named in his will, a letter in which he stated that he had employed his son as his confidential agent in all his matters for a great number of years, that his son was familiar with his business and all his interests, that he was gratified at the son's conscientious performance of all duties which he had been asked to perform and with his success in conserving his estate, and that he deemed it his duty to request the trust company "to continue his services, to consult with him and seek his coöperation in all important matters and also to pay him such compensation as will adequately recompense him for whatever time and effort he may employ in assisting you in the management of my estate, after my death, such compensation not to be less than $400 each month." Since the father's death the executor has paid the son this sum and fifty per cent of the royalties in excess of $18,000 per year.

No objection was made by the widow and daughter to the payments of these sums set forth in the first six accounts filed by the executor. The question was not raised until the filing of the seventh account, nine years after the death of the testator. Before the audit of the first account, a few months after the death of Dr. Hand,

the widow made a claim that the agreement to pay the excess royalties constituted a violation of the terms of her agreement to be bound by the provisions of her husband's will, which agreement provided that no gifts should be made by him in his lifetime exceeding the sum of $5,000, unless she were given one-third of the total of all gifts exceeding the sum named. In the letter which her counsel wrote to the executor on the subject it was stated that she did not question the propriety of the "gifts" (as she termed them) to the son "but thinks she is entitled to a proportion thereof under the agreement wherein she approved the will." As a result of her attitude a stipulation was entered into between the widow, the son and the daughter under which certain sums were paid to each of them out of the estate. Following this an agreement was entered into between the widow and the son under the terms of which she ratified and confirmed the contract made between the father and the son under the provisions of which the latter was to receive fifty per cent of the excess royalties, and agreed that it should be continued in force so long as the agreement between the decedent and Smith, Kline & French Company was operative. She withdrew all claim that the contract constituted a gift by the decedent to his son. In this agreement she undertook to elect to take under the provisions of her husband's will. From the time of the execution of this contract, January 9, 1924, until the filing of exceptions to the seventh account on June 20, 1932, the executor paid to the son the $400 per month and the excess royalties, without objection by the widow.

Under the terms of the will the widow, the daughter and the son share equally in the net income of the estate. Boiled down to its essentials, the contention of the appellants, the widow and daughter, is that the payments to the son of the monthly salary and of the surplus royalties is unfair because it decreases the amount of the net income which would otherwise come to them.

The court below was unable to find anything in the evidence which cast doubt on the good faith of the transactions between father and son, or any evidence of any advantage of decedent having been taken by his son. Our reading of the record leads us to the same conclusion. Under the facts and circumstances as we have outlined them, the contention of appellants, that the contracts between the father and son are presumptively fraudulent and that a burden is cast upon him to rebut such a presumption, cannot be successfully maintained. The impression made upon our minds by the papers themselves and the testimony is to the contrary. They evidence to us an entirely proper and commendable relation between the father and son. It is praiseworthy that there should be relations of trust and confidence between parent and child, and no presumption of an undue or improper influence by a son upon a father arises out of their relation or out of the imposing of confidence by a father in a son. Business dealings between parent and child or gifts from one to the other are not prima facie to be considered fraudulent, and those who attack such transactions assume the burden of furnishing clear proof of fraud: Compton v. Hoffman, 265 Pa. 257; Carney v. Carney, 196 Pa. 34.

Null's Est., 302 Pa. 64, cited by appellant, when its facts are taken into account and considered with those appearing in the instant case, is an authority in favor of the appellee. In Palmer v. Foley, 305 Pa. 169, where we set aside a conveyance by a mother to a daughter, it appeared that the mother was of feeble mind and that the transaction was shockingly improper. Nothing like that exists in this case. Darlington's Est., 147 Pa. 624, also cited by appellant, on its facts is not at all comparable with the case at bar. As between parent and child there is a presumption of fairness and not of fraud: Northern Trust Co. v. Huber, 274 Pa. 329. All through their argument appellant's counsel treat the royalty payments and the salary as gifts. We do not so regard them. They are

what they purport to be, payments on contracts for services. Such cases as Thorndell v. Munn, 298 Pa. 1, and those therein cited, have no bearing on this controversy whatever. They are cases relating to gifts without adequate consideration.

In view of the papers signed by the widow in which she ratified and approved the will of her husband, and ratified and approved the contract between him and his son, she cannot be heard to say that there was anything fraudulent about the transaction. So far as the daughter is concerned, the father had the unquestionable right to make such gifts to or such contracts with his son as he pleased. She has no standing whatever to complain. Even if the contracts were unduly favorable to the son, this is of no moment so far as she is concerned.

We do not consider as precatory the request in the will and the letter that the executors employ the son. In the light of the relations which existed between the father and son and their past business connections, it was a positive direction. "It is uniformly held that words of recommendation, request, wish or expectation addressed to the executor and used in respect to the direct disposition of the testator's property are prima facie testamentary and imperative rather than precatory in effect, on the ground that the testator, having a right to make such a disposition of his property as he thinks proper, the expression of his wish is deemed to be the expression of his will and the request is equivalent to a command": 49 Amer. Law Reps. Annotated 31; Presbyterian Board of Foreign Missions v. Culp, 151 Pa. 467; Edwards's Est., 255 Pa. 358; Stinson's Est., 232 Pa. 218. There is nothing in Lindsay's Est., 311 Pa. 536, in conflict with the rule laid down in the cited authorities.

The decree of the court below confirming the account is affirmed at appellants' cost.