## Hand Estate.

Argued January 6, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*M. J. Martin,* for appellant.

*J. Donald Reifsnyder,* of *Stark, Bissell & Reifsnyder,* and *Esdras F. Howell,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 20, 1944:

Decedent, David Bishop Hand, was a physician who owned certain proprietary medicines which were manufactured and sold for him by Smith, Kline & French Company. By virtue of contracts with that company he received large annual royalties, and when he died, on April 1, 1923, he left a gross estate of more than $1,-000,000. His financial affairs, however, were extremely complicated as his investments were of a nature requiring special attention and he was largely indebted for loans and other obligations. For this reason, in his will, dated May 7, 1919, he provided in effect that his executor should not attempt to liquidate his estate immediately,

but should, from time to time, renew the notes representing his indebtedness and should not jeopardize his investments by any hurried conversion of them into cash. In a codicil, dated November 14, 1922, he stipulated that one half of the net income from his estate should be used by his executor and/or trustee for the payment of his debts, the remaining half to be divided equally among his widow, his son and his daughter, who, after all the debts were paid, were to receive the entire net income for their respective lives; after the death of all of them, and if the debts had then been liquidated, the principal was to be divided among his grandchildren. It was evident, therefore, that it would be necessary to hold the estate intact for a considerable time; indeed Dr. Hand expressly stated in his will: — "I contemplate the holding of the bulk of my estate together by my Executor and Trustee for quite a period of years, before it is finally distributed." The tenth paragraph of the will is as follows: — "I request my Executor hereinafter named to employ my son, F. Cromwell Hand, as far as it finds he can be of benefit to my estate, and to pay him for his services such compensation as it shall deem just and adequate." The executor and trustee named in the will is Lackawanna Trust Company, now, by merger, Scranton Lackawanna Trust Company.

In 1919 or 1920 some differences having arisen between Dr. Hand and Smith, Kline & French Company, his son, F. Cromwell Hand, was of great service in accomplishing an adjustment between them and obtaining an increase of the royalties payable to Dr. Hand. In recognition of this fact the latter, on January 27, 1920, agreed that his son, or in case of his death his estate, should receive each year half of any increase in the royalties over $18,000; this was confirmed by a more elaborate contract entered into on November 10, 1920, wherein the son was given considerable authority in the operation of Dr. Hand's affairs and for his services was to receive the sum of $750 per month "so long as he shall live, and

so long as his services shall be required or requested by said David B. Hand." On that same date, November 10, 1920, Dr. Hand signed and delivered to Lackawanna Trust Company a letter, as follows: — "As I have employed my son, F. Cromwell Hand, as my confidential agent in all my matters for a great number of years last past, and as he has been and now is thoroughly familiar with my business and all my interests, and whereas, I am gratified at his conscientious performance of all duties which I have asked him to perform, and with his success in conserving my estate: I deem it to be my duty to request you to continue his services, to consult with him and seek his co-operation in all important matters, and also, to pay him such compensation as will adequately recompense him for whatever time and effort he may employ in assisting you in the management of my estate, after my death, such compensation not to be less than $400 each month."

Since Dr. Hand's death the contracts with Smith, Kline & French Company have continued in full operation, and F. Cromwell Hand was employed by the executor and regularly paid the sum of $400 per month. Upon the audit of the executor's seventh account in 1933 the credits claimed by it for those payments and for the payments of half of the royalties in excess of $18,000 per annum were excepted to by the widow and the daughter, culminating in an appeal to this court; the attack was based on the ground that the contracts between the father and the son were "fraudulent" and the result of undue influence exercised upon decedent. It was held (315 Pa. 238, 172 A. 666) that the agreements were valid and that the request in the will and the letter that the executor employ the son was not precatory but a positive direction. Subsequent to this decision and the filing of the Trust Company's tenth and final account as executor the executorship was terminated, having lasted nineteen years, and, in January, 1942, the assets of the estate were turned over to the Trust Company as trustee. In that

capacity it continued to employ F. Cromwell Hand for the performance of the same services as before in connection with the Smith, Kline & French Company contracts, but it did not pay him. Upon the audit of its first account as trustee it petitioned the court for a ruling on the validity of his claim for compensation from January 1, 1942, to the time of the filing of the petition and as to its duty to employ him thereafter. The court rejected the claim and F. Cromwell Hand has appealed.

The contention of decedent's daughter, the present appellee, is that the tenth paragraph of the will, requesting "my executor" to employ decedent's son, was designedly directed to the executor alone, not to the trustee, although the Trust Company was appointed to serve in both capacities, and therefore, upon the termination of the executorship, the request was no longer binding. This argument, apparently sustained by the court below, rests upon an extremely tenuous foundation. It might have merit had the decedent in his will shown an intention to differentiate sharply between the duties, powers and functions of the Trust Company as executor on the one hand and as trustee on the other, but those terms are used so indiscriminately by him that, not only in this but in other instances throughout the will, his purposes might be defeated if the contention urged by appellee were to be adopted. There is no particular time suggested in the will when the executorship was to cease and the trusteeship begin, nor any direct or definite bequest or devise of any portion of the estate to the trustee as such. The reason for this is probably, as previously pointed out, that decedent did not contemplate the usual prompt liquidation by an executor, but desired that his indebtedness should be paid gradually and that his beneficiaries should receive the full enjoyment of the income and principal of the estate only after all obligations had finally been liquidated; as a matter of fact the executorship did continue, following out this plan of the decedent, for nearly

twenty years. We therefore have no difficulty in concluding that the request to continue the son's employment was intended to apply whether the Trust Company was acting as executor or as trustee.

The real question involved is not the one thus presented, but whether the Trust Company, in *either* capacity, is compelled to employ appellant at a salary of $400 per month during his entire life, or even so long as the contracts with Smith, Kline & French Company may continue in effect. As far as the *will* is concerned, although the request made by decedent that his son be employed is, as held in our previous decision, mandatory and not merely precatory, its mandate is limited to an employment deemed by the trustee to be of benefit to the estate, and the amount of compensation is left to its judgment as to what is just and adequate. It is the *letter* of November 10, 1920, which deprives the Trust Company of all discretion in deciding as to the desirability of the employment and the minimum compensation to be paid therefor. That letter, however, has not been probated, and it cannot be judicially recognized as overriding a provision of the will with which it is wholly inconsistent. Moreover, even if it were to be regarded as having the same legal potency as a probated codicil to the will, it could not properly be construed as meaning that the Trust Company was to be obliged to employ appellant for life, or for the duration of the Smith, Kline & French Company contracts, regardless of whether or not the Company considered his services beneficial, and to pay him in any and all events the minimum sum stipulated in the letter. All that it says is that the Trust Company is to "continue his services", but *for how long* is not indicated. It is inconceivable that decedent meant by such a direction to give his son a life annuity of $4,800. It is established in the law of contracts that when an agreement provides that one party shall render service to another, but does not specify a definite time or prescribe conditions which

shall determine the duration of the relation, the contract may be terminated by either party at will,[1] unless the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement, call for a construction of the contract as providing for a reasonable time for the duration of the relationship which it creates, or some particular period inferred from the nature of the undertaking:[2] *Slonaker v. P. G. Publishing Co.*, 338 Pa. 292, 296, 13 A. 2d 48, 50, 51. By analogy to this principle, taking all the circumstances into consideration, decedent's letter must be regarded as a peremptory demand upon the Trust Company to employ appellant, and at the minimum compensation stipulated, only for a reasonable period of time during which the Trust Company might not be able to acquire that familiarity with the operation of the Smith, Kline & French Company contracts and skill in dealing with respect to them which would be necessary for the effective and successful performance of its duties as executor and trustee, those contracts constituting the main asset of the estate. Certainly, if decedent had wished to provide a life annuity for his son regardless of any changing circumstances, he would have done so in the formal will and codicil which he executed and in the more precise language which characterizes those instruments. It is our opinion, therefore, that, so far as the *future* is concerned, the Trust Company is *authorized* under para-

---

[1] *Hogle v. DeLong Hook and Eye Co.*, 248 Pa. 471, 94 A. 190; *Standard Life Insurance Co. v. Carey*, 282 Pa. 598, 128 A. 537; *Jones v. Pittsburgh Mercantile Co.*, 295 Pa. 219, 145 A. 80; *Trainer v. Laird*, 320 Pa. 414, 183 A. 40; *Johnson v. Spear & Company*, 122 Pa. Superior Ct. 526, 186 A. 313; *Kostenbader v. Schoeneck Farms, Inc.*, 134 Pa. Superior Ct. 334, 4 A. 2d 199; *Hay v. Pittsburgh Lodge No. 46, Loyal Order of Moose*, 137 Pa. Superior Ct. 205, 8 A. 2d 434.

[2] *Weidman v. United Cigar Stores Co.*, 223 Pa. 160, 72 A. 377; *Nolle v. Mutual Union Brewing Co.*, 264 Pa. 534, 108 A. 23; *Rossmassler v. Spielberger*, 270 Pa. 30, 112 A. 876.

graph ten of the will to employ appellant if in its judgment it deems his services beneficial to the estate, and to pay him such compensation as it deems just and adequate, but that the letter of November 10, 1920, is not presently effective to *compel* it to continue his employment if it does not consider that to be in the best interests of the trust, or to pay him any compensation greater than what, in its judgment, his services are reasonably worth.

As far as appellant's claim to receive compensation at the rate of $400 per month from January 1, 1942 to the time of the audit of the trustee's first account is concerned, appellant would seem clearly entitled to have it allowed. As previously stated, the trustee had authority under paragraph ten of the will to employ him, and, since it did employ him, and since the evidence indicates that he performed the same duties and rendered the same services as during the nineteen years of the executorship, there is no reason why he should not be compensated accordingly. The Trust Company states in its petition that it considers his claim to be just.

The order disallowing appellant's claim is reversed; costs to be paid out of the estate.