## Hand Estate.

452

Argued November 18, 1955. Before STERN, C. J., STEARNE, BELL, MUSMANNO and ARNOLD, JJ.

*Philip Price*, with him *James W. Scanlon, Minturn T. Wright, III* and *Barnes, Dechert, Price, Myers & Rhoads*, for appellants.

*C. H. Welles, III*, with him *Esdras F. Howell* and *Welles & Mackie*, for appellee.

OPINION BY MR. JUSTICE BELL, March 13, 1956:

David Bishop Hand died in 1923 leaving a widow, a son Cromwell and a daughter Mrs. Dean. Dr. Hand's widow died in 1950 and his son on March 16, 1953. A *Third* Partial Account of the trustee under the will of Dr. Hand was filed because of the death of testator's son. The Court below awarded to the Estate of testator's son, F. Cromwell Hand, one-half of the royalties in excess of $18,000 a year which were received under decedent's contract with Smith, Kline & French

Company. Mrs. Dean and her three children opposed the claim and filed this appeal.

The disputes in this family have been both unfortunate and interminable. This is the fifth time the estate has been before this Court. It will therefore be sufficient, we believe, to briefly summarize the facts.

Dr. Hand practiced medicine in Scranton for many years and invented a number of proprietary medicines. In 1889 he entered into a contract with Smith and Kline Company, now known as Smith, Kline & French Company, under the terms of which the Company agreed to pay him certain royalties. Between 1899 and 1910 Dr. Hand and the Company made five contracts. On *February 19, 1920* these contracts were modified and the royalty rates payable to Dr. Hand were increased. Dr. Hand executed and delivered to his son who had been in his employ the following paper:

"Dr. D. B. Hand
520 Spruce St.
Scranton, Pa.

Scranton, Pa. *Jan. 27, 1920*\*

To compensate my son, F. Cromwell Hand for his services in which he accomplished settling the difference with Smith, Kline & French Company and amending royalty provisions of existing contract whereby royalty was increased. I hereby agree that he (F. Cromwell Hand) or in case of his death, *his estate* shall receive fifty per cent. of any amount over $18,-000.00 which was about the amount I received under the old contract of the year 1919.

D. B. Hand

Witness

John Fitzsimmons
Nellie M. Harrison"

---

\* Italics throughout, ours.

454

On *November 10, 1920* Dr. Hand signed a paper in which he recited what his son Cromwell had accomplished for him and said:

". . . I hereby agree that my said son, or, in case of his death, *his estate,* shall receive fifty (50) per cent. of any sum paid me as royalties in excess of the sum of fifteen hundred dollars ($1500) *paid to me, or my estate,* in any month, beginning with March, 1920, as royalties due under said contract with Smith, Kline and French Company; . . ."

Also, on *November 10, 1920* Dr. Hand and his son Cromwell entered into a formal agreement executed by both parties in which it was recited that Cromwell had acted as Dr. Hand's confidential agent and manager of his business affairs, and in consideration of past and future services Dr. Hand agreed to pay to Cromwell so long as Cromwell shall live and so long as his services shall be required or requested by Dr. Hand the sum of $750 per month until Dr. Hand's death. The contract further gave Cromwell full powers as attorney-in-fact to act for Dr. Hand. There followed a provision in which Dr. Hand confirmed the agreement made between him and Cromwell on *January 27, 1920*: ". . . by reason of all of which the said David B. Hand agreed to give the said F. Cromwell Hand fifty per cent. (50%) or one-half (½) of all net royalties payable under said agreement in excess of the sum of Eighteen Thousand Dollars ($18,000) per annum . . . These moneys to be paid in addition to the said monthly salary and for such time and *as long as such royalties* are paid under said Smith, Kline & French Company agreement . . ."

Dr. Hand left a will which provided in substance for equal payments of net income to his wife, his son (and upon the son's death, his wife and children) and

Mrs. Dean (and upon her death in equal shares to her children) ; and after the death of his wife all of the net income was to be equally divided between his son and his daughter; and after the death of testator's wife and his son and his daughter, the residue of his estate was to be divided and paid *equally* between the family of his son and the family of his daughter.

On January 9, *1924,* testator's widow and his son, Cromwell, in order to end family disputes and amicably settle her rights under an inter vivos agreement with her husband, executed an agreement under which (1) the widow was given $6,000 out of the estate in full settlement of all claims she had against the estate for any alleged gifts made by decedent in his lifetime to his daughter or his son, and (2) the widow in turn agreed to all the provisions contained in the aforesaid *agreement dated November 10, 1920* between Dr. Hand and his son, and (3) she further agreed that the provision of the *November 10, 1920* contract should continue in full force and effect as long as the agreement or any modification thereof between Dr. Hand and Smith, Kline & French Company continued.

Dr. Hand, after the aforesaid agreements between himself and his son, Cromwell, dated January 27, 1920, November 10, 1920, and another on November 10, 1920, again *modified* his contract with Smith, Kline & French Company on February 14, *1921,* and on August 29, *1922.* It is important to note that Dr. Hand paid Cromwell the share of the royalties in excess of $18,-000. payable each year *under these modified agreements.*

After Dr. Hand's death the contract with Smith, Kline & French Company was modified by his executor on May 20, 1924, June 8, 1928, February 25, 1929, February 26, 1929, May 20, 1929, and November 14,

1929, and the royalty rate was increased. The various contracts were consolidated into one on June 18, 1930, and this was in turn amended on February 20, 1931. It is important to note that the increased royalties provided in the aforesaid *modified* agreements were paid to Cromwell by his father's estate without question or objection by anyone until the executor filed its Seventh Partial Account on June 7, *1932*. Testator's widow and Mrs. Dean objected at the audit of this account in 1932 to payments to Cromwell of the aforesaid excess royalties, as well as to his employment by the estate at a salary. The excess royalties over and above $18,000. which at first were small, had greatly increased, and these increases, if payable to Cromwell, necessarily decreased the amounts of *net* income payable to the widow and to Mrs. Dean. The case was appealed to this Court: See *Hand's Estate*, 315 Pa. 238, 172 A. 718. In that case *all of the ambiguous agreements here involved were considered by this Court* and the validity and interpretation, though not the duration thereof, were necessarily determined. The Court decided: (a) that Cromwell had not exerted fraud or undue influence on his father; (b) that the excess royalty payments were not gifts but valid enforceable contracts; (c) that Cromwell's employment by the executor was in accordance with Dr. Hand's will; (d) that the widow was bound by her agreement of *January 9, 1924*; (e) that that agreement, although not signed by Mrs. Dean, had been acquiesced in by her; (f) that from January 9, 1924, until the filing of exceptions to the executor's Seventh Account in 1932 neither the widow nor Mrs. Dean objected to the payment to Cromwell of the aforesaid Excess Royalties which the executor had paid in accordance with Cromwell's agreement with his father and subsequent modifications thereof; and (g) said payments were approved and affirmed.

Justice SCHAFFER, speaking for the Court, said (page 244) : "In view of the papers signed by the widow in which she ratified and approved the will of her husband, and ratified and approved the contract between him and his son, she cannot be heard to say that there was anything fraudulent about the transaction. So far as the daughter is concerned, the father had the unquestionable right to make such gifts to or such contracts with his son as he pleased. *She has no standing whatever to complain.* Even if the contracts were unduly favorable to the son, this is of no moment so far as she is concerned."

Appellants' position in the instant appeal is "that Dr. Hand provided by Agreement No. 3 [November 10, 1920] for the compensation to be paid Cromwell for negotiating the contract of February 19, 1920 and fixed such compensation at a specified share of the royalties received under 'said agreement' that Cromwell had negotiated; that the right to receive such compensation expired with the termination of 'said agreement' and was revived only by Agreement No. 4 with Charlotte [the widow], in which Mrs. Dean, but not her sons, acquiesced and which extended Cromwell's right to receive such compensation to 'any modifications' of 'said agreement'; that the effect of Agreement No. 4 ended at Charlotte's death since Charlotte, being but a life beneficiary, could not contract in respect of income of the estate for longer than her own life . . . and thus that there is no compensation still due which Cromwell's estate would have any right to receive."

Notwithstanding Mrs. Dean's contention that the agreements expired upon the widow's death, she made no objection to the trustee's *Second* Account (showing payments to Cromwell of excess royalties under the *modified* agreements) which was filed after the widow's death and duly confirmed.

Except for the question of termination at death of testator's widow, all of Mrs. Dean's present contentions could have been and either were or should have been made in the appeal to this Court sur the Seventh Partial Account filed by the executor. Appellants in effect seek to have us reverse or limit this Court's prior decision in *Hand's Estate,* 315 Pa., supra, and interpret the agreements entirely differently from the way they were interpreted in that decision and from the way they have been interpreted by all parties involved from February 14, 1921 until 1953. Dr. Hand in his lifetime acquiesced in the payments of excess royalties to Cromwell *under two modifications* of the agreements of January 27, 1920, and February 19, 1920. After Dr. Hand's death the widow and Mrs. Dean acquiesced in the payments to Cromwell of excess royalties *under nine modifications* of the Company's agreement, and likewise made no objections to the payment to Cromwell of *increased* excess royalties under the modified agreements as shown in and by the many accounts of the executor and in the trustee's Second Account after the widow's death. Under these facts, Mrs. Dean is not in a position to object to these agreements or seek a different construction thereof. In *Foulke v. Miller,* 381 Pa. 587, 595, 112 A. 2d 124, the Court said: "Where a contract is reasonably capable of two different interpretations, Courts will interpret the agreements just as the parties themselves did: Alpha Claude Neon Corporation v. Pennsylvania Distilling Company, Inc., 325 Pa. 140, 188 A. 825; McMillin v. Titus, 222 Pa. 500, 72 A. 240; Gass Appeal, 73 Pa. 39, 41; Gillespie v. Iseman, 210 Pa. 1, 59 A. 266; Peoples Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22, 25 A. 749; Disston Estate, 349 Pa. 129, 134, 36 A. 2d 457."

Appellants further contend that Mrs. Dean's three children, one of whom was a minor, are not precluded

from challenging the validity of the above mentioned agreements, as well as this Court's interpretation thereof in *Hand's Estate*, 315 Pa., supra, because they were not parties to the agreements or to the appeal, and because they were not represented at the various prior accountings of the executor and of the trustee. Mrs. Dean's children are remaindermen and have no present interest in income, and the objections herein raised, as well as the agreement made between Cromwell and testator's widow on January 9, 1924, related only to income. The children therefore have no standing at this time to object to payments of income, viz., excess royalties, to Cromwell's estate.

The agreement made by Dr. Hand's widow and Cromwell on January 9, 1924, and acquiesced in by Mrs. Dean could not bind her children or any remaindermen. Whenever the interests of Mrs. Dean's children or other remaindermen arise, they will not be precluded from contending that the agreements made between Dr. Hand and his son, Cromwell, expired when the contract of February 19, 1920 expired, or were intended to terminate upon the death of Mrs. Dean, or upon the termination of Dr. Hand's trust estate, or otherwise, and were not to continue, as appellee claims, as long as Smith, Kline & French Company were compelled to pay royalties to the Estate of Dr. Hand.

Decree affirmed; costs to be paid by appellants.