## Hand Estate.

Argued May 27, 1958.   Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Philip Price,* with him *James W. Scanlon, Cuthbert H. Latta,* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellants.

*Norman H. Brown,* with him *Bruce L. Castor, H. Ober Hess,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellees.

OPINION BY MR. JUSTICE BELL, September 29, 1958:
Cromwell Hand's heirs filed a claim for "excess royalties" at the audit of the fourth and final account

of the trustee[1] of the will of Dr. David Bishop Hand, who was Cromwell's father. Dr. Hand's testamentary (residuary) trust has terminated and the principal is presently distributable to the remaindermen. The lower Court allowed the claim.

The question involved narrows down to this: Are the heirs of Cromwell Hand entitled to "excess royalties" under the contract made between Denver Chemical Company and the trustee of the will of Dr. Hand?

Dr. Hand died April 1, 1923. He bequeathed his residuary estate in trust to pay the income—one-third to his widow for her life, one-third to his daughter, Mrs. Dean, for her life, and one-third to his son, Cromwell, for his life. He further provided that after the death of the survivor of his widow and his son and his daughter (which occurred in 1956), the principal of the trust should be paid "equally among and between the widow of my son, FREDERICK CROMWELL HAND and all of my grandchildren, the issue of any deceased grandchild to take the share of his, her or their parents, it being my intention that my grandchildren shall take per capita and not per stirpes, and that the widow of my said son, FREDERICK CROMWELL HAND, shall rank and count as one of such grandchildren." The three children of Mrs. Dean, who are remaindermen, are the appellants.

Dr. Hand, a Scranton physician, invented a number of proprietary medicines. In 1889 he made a royalty contract for these medicines with the predecessor of Smith, Kline & French Company,[2] hereinafter called S.K.F.

---

[1] Dr. Hand's executor filed 8 accounts, the last one in 1942.

[2] The contract, which was originally made with Smith & Kline Company, was modified or changed 16 times between 1889 and 1931.

In *1920* Cromwell renegotiated his father's contracts with S.K.F. and as a result thereof the royalties payable to Dr. Hand were increased. Thereupon Dr. Hand executed and delivered to Cromwell (1) a paper dated January 27, 1920, (2) another paper dated November 10, 1920, and (3) a mutually executed contract with Cromwell dated November 10, 1920. These papers which have been twice previously involved in litigation before this Court,[3] even when construed together as they must be, are in some respects ambiguous. However, they form the basis for the present claim made by Cromwell's heirs and will have to be briefly reviewed.

The first paper reads as follows:

"Scranton, Pa., *Jan. 27, 1920*[4]

"To compensate my son, F. Cromwell Hand for his services in which he accomplished settling the difference with Smith, Kline & French Company and amending royalty provisions of existing contract whereby royalty was increased. I hereby agree that he (F. Cromwell Hand) or in case of his death, his estate shall receive fifty per cent. of any amount over $18,000.00 which was about the amount I received under the old contract of the year 1919.

D. B. Hand"

*On November 10, 1920* Dr. Hand executed the following paper upon which Cromwell's heirs mainly rely. After reciting what his son Cromwell had accomplished for him, he said:

". . . I hereby agree that my said son, or, in case of his death, his estate, shall receive fifty (50) per cent. of any sum paid me as royalties in excess of the sum

---

[3] *Hand's Estate*, 315 Pa. 238, 172 A. 666; *Hand Estate*, 384 Pa. 451, 121 A. 2d 452. Cf. also *Hand's Estate*, 288 Pa. 569, 136 A. 864: and *Hand Estate*, 349 Pa. 111, 36 A. 2d 485.

[4] Italics throughout, ours.

of fifteen hundred dollars ($1500) *paid to me, or my estate,* in any month, beginning with March, 1920, *as royalties due under said contract with Smith, Kline & French Company;* but . . . he shall reimburse me or my estate for any [excess] sums . . . received by me or my estate and *paid under and pursuant to the said Smith, Kline & French Company's contract or pursuant to any subsequent contract, change or modification thereof."*

Also, *on November 10, 1920* Dr. Hand and his son Cromwell entered into a formal agreement executed by both parties in which it was recited that Cromwell had acted as Dr. Hand's confidential agent and manager of his business affairs, and in consideration of past and future services Dr. Hand agreed to pay to Cromwell so long as Cromwell shall live and so long as his services shall be required or requested by Dr. Hand the sum of $750 per month until Dr. Hand's death. The contract further gave Cromwell power to act as attorney-in-fact for Dr. Hand. There followed a provision in which Dr. Hand confirmed the agreement made between him and Cromwell on *January 27, 1920*: ". . . by reason of all of which the said David B. Hand agreed to give the said F. Cromwell Hand fifty per cent. (50%) or one-half (½) of all net royalties payable under said agreement [between David B. Hand and Smith, Kline & French Company] in excess of the sum of Eighteen Thousand Dollars ($18,000) per annum . . . These moneys to be paid in addition to the said monthly salary and for such time and *as long as such royalties are paid under said Smith, Kline & French agreement* . . ."

Dr. Hand, after the aforesaid agreements with his son, Cromwell, dated January 27, 1920, November 10, 1920, and another on November 10, 1920, again *modified* his contract with Smith, Kline & French Com-

pany on February 14, *1921,* and on August 29, *1922.* Dr. Hand paid Cromwell the share of the royalties in excess of $18,000 payable each year *under these modified agreements.* After Dr. Hand's death his widow and Mrs. Dean acquiesced in the payments to Cromwell by Dr. Hand's executors and by his trustee of excess royalties *under nine subsequent modifications* of the S.K.F.-Dr. Hand Agreements. This Court held in *Hand Estate,* 384 Pa., supra, that under the above mentioned facts Mrs. Dean was not in a position to contest these modified agreements or the payments of excess royalties made to Cromwell thereunder, or to seek a different construction of the original or subsequent agreements.

The Court in its opinion pertinently said: "Mrs. Dean's children are remaindermen and have no present interest in income, and the objections herein raised, as well as the agreement made between Cromwell and Testator's widow on January 9, 1924, related only to income. The children therefore have no standing at this time to object to payments of income, viz., excess royalties, to Cromwell's estate.

"The agreement made by Dr. Hand's widow and Cromwell on January 9, 1924, and acquiesced in by Mrs. Dean could not bind her children or any remaindermen. Whenever the interests of Mrs. Dean's children or other remaindermen arise, they will not be precluded from contending that the agreements made between Dr. Hand and his son, Cromwell, expired when the contract of February 19, 1920 [with S.K.F.] expired, or were intended to terminate upon the death of Mrs. Dean, or upon the termination of Dr. Hand's trust estate, or otherwise, and were not to continue, as appellee claims, as long as Smith, Kline & French Company were compelled to pay royalties to the Estate of Dr. Hand."

It is clear that Mrs. Dean's children, who are remaindermen, are not precluded from raising the questions here involved.

In 1956 (3 years after Cromwell's death), S.K.F. notified Dr. Hand's trustee that the Hand remedies are proprietary medicines and "it has become an ethical drug manufacturer"; and that if the present trend continued,[5] it would terminate the Dr. Hand contract. Thereupon one of Mrs. Dean's sons negotiated a royalty contract with Denver Chemical Company which provided for new royalty rates for Dr. Hand's remedies and *for new remedies and for revived or modernized formulas and for foreign sales.* Unlike S.K.F., the patent medicine business was Denver's special field, and it enjoyed a reputation for skill in the marketing of patent medicines in foreign countries. In these fields S.K.F. had no interest—indeed it had never sold the Hand remedies outside the United States. Dr. Hand's testamentary trustee and S.K.F. thereupon cancelled in the fall of 1956 the contract between Dr. Hand and S.K.F.; the trustee executed and delivered to S.K.F. a "cancellation and release", and (virtually) contemporaneously therewith executed the new contract with Denver Chemical Company. Cromwell's heirs objected to the cancellation of the S.K.F. Agreement and the release of S.K.F., but executed written consents to the new royalty agreement with Denver.

Cromwell's heirs base their claim to the Denver royalties on the ground that the aforesaid papers or agreements executed by Dr. Hand in 1920 were not limited to excess royalties received by him or his estate from S.K.F., but extended to and included all excess royalties received by Dr. Hand or his estate *from*

---

[5] One out of the original eight remedies was still valuable, although even its sales were rapidly declining.

*any source.* Disregarding all the other language, they point to the following language in Dr. Hand's letter of November 10, 1920, in which *in referring to a reimbursement* by Cromwell to him he says: ". . . under my agreement to pay him fifty (50) per cent. of any excess of $18,000 received by me or my estate and paid under and pursuant to any subsequent contract, change or modification thereof." We cannot agree with this interpretation. For a few hours work in successfully renegotiating the royalty rate in 1920 (which contract was modified 8 times thereafter), Cromwell and his estate have received under or pursuant to Dr. Hand's contracts with S.K.F. excess royalties totaling approximately $257,000. We are convinced from the language as well as the spirit of the three 1920 agreements that the excess royalty payments promised therein were limited and were intended to be limited to those payable under the S.K.F. contracts with Dr. Hand and were not to extend to any royalty contract which Dr. Hand's testamentary trustee might make with another and entirely different manufacturer.

The decree of the lower Court is reversed and the case is remanded to that Court with directions to enter an appropriate decree consistent with this opinion. Costs shall be paid by appellees.